UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

FREDERIC P. ZOTOS,                    )
                                      )
            Plaintiff,                )
      v.                              )         CIVIL ACTION
                                      )         NO. 12-11126-JGD
TOWN OF HINGHAM, et al.,              )
                                      )
            Defendants.               )


**MEMORANDUM OF DECISION AND
ORDER ON DEFENDANTS' MOTION TO DISMISS**

September 19, 2013

DEIN, U.S.M.J.

# I.  INTRODUCTION

The plaintiff, Frederic P. Zotos ("Zotos"), has brought this action against the Town

of Hingham, Massachusetts ("Town" or "Hingham"), and eleven of the Town's officials

and employees, claiming that the defendants engaged in a fraudulent traffic enforcement

scheme by illegally posting unreasonably low motor vehicle speed limits, in violation of

Mass. Gen. Laws ch. 90, § 18, and improperly issuing motor vehicle citations to the

plaintiff and others for speeding in excess of the improperly posted limits.  By his

fourteen-count complaint, Zotos has asserted claims against the defendants, pursuant to

42 U.S.C. § 1983, for violations of his right to substantive and procedural due process, as

well as for punitive damages based on the alleged due process violations (Counts I-X).  In

addition, Zotos has asserted state law claims against the defendants for abuse of process

(Count XI), fraudulent misrepresentation (Count XII), negligent misrepresentation (Count XIII), and unjust enrichment (Count XIV).[1]

The matter is presently before the court on the defendants' Motion to Dismiss (Docket No. 4), by which the defendants are seeking dismissal of all of the plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(6). The defendants contend that dismissal is warranted under the doctrine of claim preclusion because the plaintiff's claims were fully and finally litigated before the state courts in the matter of <u>Hingham Police Dep't v. Zotos</u>. They further contend that even if claim preclusion does not apply, Zotos' complaint still must be dismissed because the plaintiff has otherwise failed to state a claim upon which relief may be granted. For all the reasons detailed herein, this court finds that claim preclusion does not bar Zotos' claims in this action, but that the plaintiff has failed to state a plausible claim for relief under any theory of liability. Accordingly, the defendants' motion to dismiss is ALLOWED with respect to all of Zotos' claims. Since this court is not prepared to rule that the plaintiff could not, under any circumstances, state a claim, the dismissal will be without prejudice.

## II.  <u>STATEMENT OF FACTS</u>

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), the court must accept as true all well-pleaded facts, and give the plaintiff the benefit of all

---

[1]  Zotos has mistakenly labeled both his negligent misrepresentation claim and his unjust enrichment claim as "Count XIII." For the sake of clarity, this court has referred to the unjust enrichment claim as "Count XIV."

reasonable inferences.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir.

1999).  "Ordinarily, a court may not consider any documents that are outside of the

complaint, or not expressly incorporated therein, unless the motion is converted into one

for summary judgment."  Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d

30, 33 (1st Cir. 2001).  "There is, however, a narrow exception 'for documents the

authenticity of which are not disputed by the parties; for official public records; for

documents central to plaintiffs' claim; or for documents sufficiently referred to in the

complaint.'"  Id. (quoting Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Applying

this standard to the instant case, the facts relevant to the defendants' motion to dismiss

are as follows.[2]

## Zotos' Speeding Citations

This litigation arose after Zotos received three speeding citations from Hingham

police officers during the time period between November 2002 and December 2010.  The

first citation was issued to Zotos on November 9, 2002, and contained a warning for

---

[2]  In addition to the Complaint (Docket No. 1), this court has considered the record from
the state court proceedings in Hingham Police Dep't v. Zotos, which is set forth in the
Supplemental Exhibits to Plaintiff's Memorandum of Law in Opposition of Defendants' Motion to
Dismiss (Docket No. 27) ("Pl. Ex. __") and includes the documents attached as exhibits to the
defendants' Memorandum in Support of Motion to Dismiss (Docket No. 5) ("Def. Ex. __").
Those proceedings have been referred to in the Complaint and are directly relevant to the claim
preclusion defense raised by the defendants in their motion to dismiss.  Therefore, it is appropriate
for this court to consider them without converting the defendant's motion into one for summary
judgment.  See Alt. Energy, Inc., 267 F.3d at 33 (authorizing court to consider "documents
sufficiently referred to in the complaint" on motion to dismiss (internal quotations omitted)); Silva
v. City of New Bedford, Mass., 677 F. Supp. 2d 367, 369 (D. Mass. 2009) (where a motion to
dismiss raises defense of res judicata, court may consider the record in the earlier action).

driving in excess of a 30 mile per hour ("m.p.h.") posted speed limit on Cushing Street in Hingham.  (Compl. ¶ 27 & Ex. 3 thereto).  However, because it involved nothing more than a warning, Zotos was not required to pay an assessment or to take any other action with respect to the first citation.  (Id.).

Zotos received the second citation on June 25, 2009.  (Id. ¶ 31).  At that time, defendant Officer Jeremiah Sullivan cited the plaintiff for the civil motor vehicle infraction ("CMVI") of driving in excess of a 30 m.p.h. posted speed limit on Charles Street at Maryknoll Drive in Hingham.  (Id. & Ex. 7 thereto).  Zotos initially requested a civil hearing to contest responsibility for the CMVI by making a signed request on the back of the citation and mailing it to the Registry of Motor Vehicles ("RMV").  (Id. ¶ 31). However, because he assumed that the speed limit had been properly posted and was lawfully enforceable, Zotos ultimately decided to waive the hearing and to pay the $130 assessment and $50 Head Injury Trust Fund surcharge necessary to resolve the CMVI without a hearing.  (Id. ¶ 32).

On December 2, 2010, defendant Officer Eric Chessler issued Zotos a CMVI for driving 50 m.p.h., in excess of the 30 m.p.h. posted speed limit, on Gardner Street in Hingham.  (Id. ¶ 37 & Ex. 13 thereto).  According to Zotos, the receipt of a third speeding citation from a Hingham police officer led him to suspect that "something wasn't right." (Id. ¶ 37).   Consequently, he denied responsibility for the CMVI and requested a civil hearing by making a signed request on the back of the citation and mailing it to the RMV. (Id. & Ex. 13 thereto).  He also began a private investigation into the Town's traffic

enforcement practices.  (Id. ¶ 37).  As described below, Zotos alleges that as a result of

his investigation, he determined that the Town lacked authority to post and enforce the

speed limits under which he was cited for speeding, and that the Town's actions were part

of a larger scheme to post and enforce unreasonably low speed limit signs throughout the

Town without abiding by the statutory and regulatory procedures required to do so.

### Massachusetts Speed Laws

Speed limits in Massachusetts are established under either Mass. Gen. Laws ch.

90, § 17 ("Section 17") or Mass. Gen. Laws ch. 90, § 18 ("Section 18").  "Section 17 sets

forth the basic law [while] § 18 allows modifications to it."  Hingham Police Dep't v.

Zotos, 81 Mass. App. Ct. 1136, 966 N.E.2d 868, 2012 WL 1689189, at *1 (2012).  Thus,

Section 17 provides in relevant part that

> [n]o person operating a motor vehicle on any way shall run it at a
> rate of speed greater than is reasonable and proper, having regard to
> traffic and the use of the way and the safety of the public.  Unless a
> way is otherwise posted in accordance with the provisions of section
> eighteen, it shall be prima facie evidence of a rate of speed greater
> than is reasonable and proper as aforesaid (1) if a motor vehicle is
> operated on a divided highway outside a thickly settled or business
> district at a rate of speed exceeding fifty miles per hour for a
> distance of a quarter of a mile, or (2) on any other way outside a
> thickly settled or business district at a rate of speed exceeding forty
> miles per hour for a distance of a quarter of a mile, or (3) inside a
> thickly settled or business district at a rate of speed exceeding thirty
> miles per hour for a distance of one-eighth of a mile, or (4) within a
> school zone which may be established by a city or town as provided
> in section two of chapter eighty-five at a rate of speed exceeding
> twenty miles per hour....

Mass. Gen. Laws ch. 90, § 17.  "In contrast, G.L. c. 90, § 18, permits the imposition of a

different speed limit so long as certain procedures are followed."  Hingham Police Dep't,

2012 WL 1689189, at *1.  Thus, under Section 18,

> [t]he city council, the transportation commission of the city of
> Boston, the board of selectmen, park commissioners, a traffic
> commission or traffic director, or the department,[3] on ways within
> their control, may make special regulations as to the speed of motor
> vehicles and may prohibit the use of such vehicles altogether on such
> ways; provided, however, that except in the case of a speed regula-
> tion no such special regulation shall be effective unless it shall have
> been published in one or more newspapers ... nor until after the
> department, and in the case of a speed regulation the department and
> the registrar,[4] acting jointly, shall have certified in writing that such
> regulation is consistent with the public interests ....

Mass. Gen. Laws ch. 90, § 18.

Allegedly, the Massachusetts Department of Transportation ("DOT") Highway

Department, acting in accordance with the authority granted to it under Section 18 and

related statutes, has established regulatory procedures for the posting of speed limits

within Massachusetts.  (Compl. ¶ 21).  Those procedures are set forth in a document

entitled "Procedures for Speed Zoning on State and Municipal Roads (2005)," which

reads in relevant part as follows:

> Chapter 90, Section 18 authorizes the posting of numerical speed
> limits on all roadways in Massachusetts.  The foundation for the

---

[3]  "Department" is defined for purposes of Chapter 90 as "the division of highways."
Mass. Gen. Laws ch. 90, § 1.

[4]  The "registrar" is defined as "the registrar of motor vehicles."  Mass. Gen. Laws ch. 90,
§ 1.

actual posting of a speed limit is a thorough traffic engineering study.  After a study has been completed, a Special Speed Regulation is drafted and approved by the governing authority of the roadway, the [RMV] and MassHighway.  *All posted regulatory speed limit signs must adhere to this approval process.  If a speed limit is posted without this procedure, it is in violation of Chapter 90, Section 18, and is therefore considered illegal and unenforceable.*

(Compl. ¶ 21) (emphasis added).

Each of the citations that Zotos received was issued pursuant to a speed limit posted under Section 18 of the Massachusetts speed laws.  (See Compl. ¶¶ 27, 31, 37).  Therefore, Zotos claims that in order to be enforceable, the posted speed limits had to have been established in accordance with regulatory procedures adopted by the DOT, and certified by both the DOT and the registrar of motor vehicles.  (See id. ¶¶ 21-22, 26, 33).  However, during his investigation into Hingham's traffic enforcement practices, Zotos allegedly obtained correspondence from state and local employees indicating that no speed study had ever been completed for Gardner Street in Hingham, where Zotos was driving when he received his third citation, and that no Special Speed Regulations had ever been issued for Gardner Street or for the portion of Charles Street where Zotos was driving when he received his second citation.  (See id. ¶¶ 39-40, 45-46).  Accordingly, Zotos claims that the speed limits under which he was cited were posted illegally and are unenforceable.

### Zotos' State Court Challenge

On February 18, 2011, a non-criminal hearing relating to Zotos' third speeding citation was held before a clerk-magistrate in the Hingham District Court.  (Id. ¶ 38).  At the conclusion of the hearing, the clerk-magistrate found Zotos responsible for the CMVI of speeding in excess of a 30 m.p.h. speed limit posted pursuant to Section 18 of the Massachusetts speed laws, and ordered the plaintiff to pay a judgment in the amount of $200.  (Id.; Compl. Ex. 17).

Zotos appealed the clerk-magistrate's finding that he was responsible for the CMVI, and on April 8, 2011, a de novo hearing took place before a judge of the Hingham District Court.  (Id. ¶¶ 38, 42).  Zotos appeared pro se and testified on his own behalf, while Officer Chessler appeared and testified as a witness for the Hingham Police Department.  (Pl. Ex. 1).  No one appeared as counsel on behalf of the Hingham Police Department.  (See id.; Compl. ¶ 42).

During the hearing, Officer Chessler relied on the speed limit posted under Section 18 to establish that Zotos had been speeding on Gardner Street, and Zotos sought to prove that the speed limit sign had been posted illegally and was therefore unenforceable. (Compl. ¶ 42; see also Pl. Ex. 1 at 4, 20-22, 24-25).  In support of his challenge, the plaintiff introduced evidence consisting of correspondence from state and local officials indicating that they had no records showing that the speed limit had been posted in accordance with the statutory requirements of Section 18.  (Compl. ¶ 42; Pl. Ex. 1 at 24-27).  He also argued that because Officer Chessler had relied on the illegally posted speed

8

limit, and had failed to establish a prima facie case of speeding against Zotos under

Section 17 of the speed laws, he could not be held responsible for speeding under

Massachusetts law.  (Pl. Ex. 1 at 27-31).  Nevertheless, at the conclusion of the hearing,

the judge found Zotos responsible for the CMVI of speeding in excess of a posted speed

limit, and ordered him to pay the $200 assessment.  (Id. at 31; Compl. ¶ 42).

 The plaintiff appealed the April 8, 2011 judgment of the Hingham District Court to

the Appellate Division of the District Court, claiming that "[t]he trial judge committed an

error of law, when he held the appellant responsible for exceeding a posted speed limit in

violation of M.G.L. c. 90. § 18, where the uncontroverted evidence showed the sign had

been unlawfully erected in violation of the express requirements of M.G.L. c. 90, § 18[.]"

(Pl. Ex. 2).  On June 20, 2011, the Appellate Division ruled that Zotos had failed to

establish an error of law.  (Pl. Ex. 4).  Accordingly, it upheld the hearing judge's finding

that the plaintiff was "responsible" for the CMVI of speeding.  (Id.).

 Thereafter, Zotos filed an appeal with the Massachusetts Appeals Court.  (Pl. Ex.

6).  In connection with his appeal, Zotos again argued that he could not be held respon-

sible for speeding on Gardner Street in Hingham because the speed limit had not been

properly posted pursuant to Section 18 of the Massachusetts speed laws.  (Id. at 9-12).  In

particular, he claimed that the speed limit sign had been erected "ultra vires, and was

therefore legally unenforceable."  (Id. at 43).  He thus contended that the Hingham

District Court judge had erred by finding him responsible for speeding, and that the

finding should be vacated.  (Id. at 12).

Significantly, in his amended brief in support of his appeal, Zotos greatly expanded his arguments and asserted, for the first time, that the actions of the Town in illegally erecting speed limit signs, and the actions of the Hingham Police Department in enforcing the signs, violated his constitutional rights.  (Id. at 44).  In particular, Zotos argued that the challenged conduct "constitute[s] an abuse of government power that shocks the conscience and offends the community's sense of fair play and decency." (Id.).  He also argued that if allowed to stand, the hearing judge's finding that he was responsible for speeding would "deprive him of his property without that process to which he is constitutionally due under the Fourteenth Amendment to the United States Constitution, 42 U.S.C. § 1983, or similar provisions of the Constitution of the Common-wealth, G.L. c. 12, § 11H."  (Id.).  Nevertheless, Zotos acknowledged that the critical issues before the court on appeal concerned whether he was responsible for violating Section 18 of the Massachusetts speed laws in light of his contention that the speed limit had been posted improperly and was therefore unenforceable.  (Id. at 45).

On May 16, 2012, the Appeals Court issued a decision in which it affirmed the Appellate Division's order upholding the finding that Zotos was responsible for the CMVI of speeding.  Hingham Police Dep't v. Zotos, 81 Mass. App. Ct. 1136, 966 N.E.2d 868, 2012 WL 1689189 (2012).  Although the Appeals Court declined to determine whether the speed limit sign on Gardner Street had been improperly posted, it found that even assuming Zotos' arguments were correct, he could still be held responsible for violating the speed laws.  Id. at *1-2.  Specifically, the Court determined that Sections 17

10

and 18 of Chapter 90 "must be read harmoniously."  Id. at *1.  Thus, the Court ruled that

"if a speed limit is posted in violation of § 18, it cannot mean that there is no speed limit

whatsoever for that area.  In such an instance, § 17 is the fallback position as to what is

reasonable and proper."  Id. at *1.

The Court further determined that regardless of whether Section 17 or Section 18

was indicated on Zotos' citation, the Commonwealth had the same burden of proving that

the plaintiff was driving in excess of that which was reasonable and proper.  See id. at *2.

It further found that Zotos suffered no prejudice "when the § 17 violation was made out."

Id. (footnote omitted).  In particular, the Court concluded that under the facts presented in

the case, Zotos was traveling in a "'thickly settled area,' in which G.L. c. 90, § 17(3),

limits speeds to thirty miles per hour. As he was cited for going fifty miles per hour, he fit

within the prohibited speed limit."  Id. (footnote omitted).  Accordingly, the Appeals

Court affirmed the decision of the Appellate Division based on Zotos' violation of

Section 17.  Id.  In doing so, it did not address or even mention Zotos' arguments

regarding the alleged violations of his constitutional rights.

Zotos subsequently sought to appeal the decision to the Massachusetts Supreme

Judicial Court ("SJC").  See Police Dep't of Hingham v. Zotos, 463 Mass. 1106, 973

N.E.2d 1269 (2012) (Table).  However, on September 7, 2012, the SJC denied his

application for further appellate review.  Id.

### The Present Litigation

On June 25, 2012, Zotos filed the instant action against Hingham and eleven of its officials and employees, for violations of his constitutional and state law rights.  By his claims, Zotos alleges that the defendants deprived him of his Fourteenth Amendment rights to substantive and procedural due process.  Additionally, he is seeking to hold the defendants liable under state law for abuse of process, fraudulent and negligent misrepresentation, and unjust enrichment.

The crux of Zotos's complaint is that the Town, as well as a number of its officials and members of its police force, have engaged in a long-standing and wide-spread practice of posting and enforcing unreasonably low speed limits, in violation of the Town's regulatory authority, in order to ensnare unsuspecting motorists in "Speed Traps." (See Compl. at Introduction).  Thus, although Zotos is again challenging the posting and enforcement of the speed limit sign on Gardner Street in Hingham, he claims that this conduct was part of a broader, fraudulent traffic enforcement scheme in which the defendants knowingly erected speed limit signs, in violation of Section 18, and improperly issued CMVIs for speeding in excess of the unlawfully posted limits.  (See, e.g., id. ¶¶ 26, 33, 35, 49-58).  According to Zotos, the defendants carried out this alleged scheme because they believed that "drivers simply go too fast," and because they feared that the State authorities charged with approving the posting of speed limits might raise, rather than reduce, the limits if the Town were to pursue the regulatory approval process.  (Id. ¶¶ 30, 33, 36, 74, 99).  He further posits that the defendants may have been motivated by a desire "to avoid the lengthy one-and-a-half year approval process[,]" as well as the

12

costs associated with that process.  (Id. ¶ 74).  In any event, Zotos alleges that the

defendants' alleged scheme has yielded significant fines from motorists traveling on

Town roadways, and has resulted in increases to drivers' insurance premiums.  (Id. ¶ 51).

By his claims in this action, Zotos is seeking both compensation for the losses he claims

to have incurred as a result of the allegedly unauthorized practices, and punitive damages

against the individual defendants for their roles in the allegedly unlawful scheme.

Additional factual details relevant to the court's analysis are described below

where appropriate.

## III.  ANALYSIS

### A.    Standard of Review

The defendants have moved to dismiss all of Zotos' claims against them for failure

to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Motions to dismiss under Rule

12(b)(6) test the sufficiency of the pleadings.  Thus, when confronted with a motion to

dismiss, the court accepts as true all well-pleaded facts and draws all reasonable infer-

ences in favor of the plaintiff.  Cooperman, 171 F.3d at 46.  Dismissal is only appropriate

if the complaint, so viewed, fails to allege a "plausible entitlement to relief."  Rodriguez-

Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

Two underlying principles must guide the court's assessment as to the adequacy of

the pleadings to support a claim for relief.  Maldonado v. Fontanes, 568 F.3d 263, 268

(1st Cir. 2009).  "'First, the tenet that a court must accept as true all of the allegations

13

contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice.'

Such conclusory statements are 'not entitled to the assumption of truth.'"  Id. (quoting

Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009))

(internal citations omitted).  "'Second, only a complaint that states a plausible claim for

relief survives a motion to dismiss.'"  Id. (quoting Ashcroft, 556 U.S. at 679, 129 S. Ct. at

1950).  "This second principle recognizes that the court's assessment of the pleadings is

'context-specific,' requiring 'the reviewing court to draw on its judicial experience and

common sense.'  '[W]here the well-pleaded facts do not permit the court to infer more

than the mere possibility of misconduct, the complaint has alleged – but it has not

show[n] – that the pleader is entitled to relief.'"  Id. (quoting Ashcroft, 556 U.S. at 679,

129 S. Ct. at 1950) (internal quotations and citation omitted; alterations in original).

### B.    Claim Preclusion

The defendants contend that all of Zotos' claims are barred, and that this action

must be dismissed, pursuant to the doctrine of claim preclusion.  According to the

defendants, Zotos effectively litigated his present claims in his state court challenge to the

CMVI he received on Gardner Street when he disputed the lawfulness of the posted speed

limit and presented his due process arguments to the Massachusetts Appeals Court in his

appellate brief.  (Def. Mem. (Docket No. 5) at 12-14).  Therefore, they contend that

Zotos is precluded from pursuing any of his claims in the instant matter.  (Id. at 13-14).

For the reasons that follow, this court finds that Zotos did not litigate his present claims

in the state court proceedings and did not have an opportunity to do so.  Accordingly, he is not precluded from pursuing those claims in this forum.

"*Res judicata*, also known as claim preclusion, 'makes a valid, final judgment conclusive on the parties and their privies, and prevents relitigation of all matters that were or should have been adjudicated in the action."  Kucharski v. Tribeca Lending Corp., 620 F. Supp. 2d 147, 150 (D. Mass. 2009) (quoting O'Neill v. City Manager, 428 Mass. 257, 259, 700 N.E.2d 530, 532 (1998)).  "The doctrine of claim preclusion is a ramification of the policy considerations that underlie the rule against claim splitting in a cause of action, and is based on the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit."  Carpenter v. Carpenter, 73 Mass. App. Ct. 732, 738, 901 N.E.2d 694, 699 (2009) (quotations, citations and punctuation omitted).  Where, as here, a federal court is asked to determine "the preclusive effect of a Massachusetts state court adjudication, [the] federal court[ ] appl[ies] the Massachusetts law of *res judicata*."  Kucharski, 620 F. Supp. 2d at 150.  "Under Massachusetts law, *res judicata* requires: '(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits.'"  Id. (quoting Kobrin v. Bd. of Registration in Med., 444 Mass. 837, 843, 832 N.E.2d 628 (2005)).  "Because claim preclusion is an affirmative defense, 'the party asserting it has the burden of establishing the facts necessary to support it.'"  Carpenter, 73 Mass. App. Ct. at 738, 901 N.E.2d at 699 (quoting Akinci-Unal v. Unal, 64

Mass. App. Ct. 212, 220, 832 N.E.2d 1, 7 (2005)).  For the reasons described below, this court finds that the defendants have failed to meet their burden.

### Timing of Claim Preclusion Defense

Zotos argues, as an initial matter, that a defense of <u>res judicata</u>, or claim preclusion, is more appropriately raised as an affirmative defense in an answer rather than on a motion to dismiss.  (Pl. Opp. Mem. (Docket No. 7) at 2-3).  Accordingly, he urges the court to reject the defendants' claim preclusion argument on procedural grounds, and allow them to raise it again at a later time if properly pled in their answer.  (<u>Id.</u> at 3). This court finds that it is appropriate to address the defendants' claim preclusion arguments in connection with the motion to dismiss, and thus declines to delay consideration of those issues.

"Procedurally, claim preclusion is usually raised as an affirmative defense in the answer to the complaint and/or on motion for summary judgment."  <u>Lynch v. Bd. of State Exam'rs of Electricians</u>, 218 F. Supp. 2d 3, 6 (D. Mass. 2002).  "However, 'where the substantive rights of parties are not endangered, a district court may in its discretion consider res judicata issues raised by motion to dismiss, rather than by the more usual form of an answer to a complaint.'"  <u>Id.</u> (quoting <u>Limerick v. Greenwald</u>, 666 F.2d 733, 736 (1st Cir. 1982)).  Consequently, it is appropriate for the court "to consider res judicata on a motion to dismiss as long as there [is] no prejudice to plaintiff resulting from the procedural format in which the issue of res judicata [is] considered."  <u>Id.</u> (quotations and citations omitted).

16

This court finds that Zotos will suffer no prejudice from having the claim preclusion issues resolved at this stage in the proceedings.  "The reason for requiring res judicata to be pleaded as an affirmative defense under Rule 8(c), Fed. R. Civ. P. is to give the opposing party notice of the plea and a chance to argue why its imposition would be inappropriate."  Id. (quotations and citations omitted).  Zotos has presented extensive arguments in opposition to the defendants' assertion that dismissal is warranted on the grounds of claim preclusion.  Therefore, he has had ample opportunity to challenge the defense.  Moreover, the state court proceedings have been completed, and Zotos has had an opportunity to supplement the record in order to submit all of the relevant portions of the state court record.  (See Docket No. 27).  Consequently, the claim preclusion issue is ripe for review and there is no harm to Zotos in having it resolved now in connection with the pending motion to dismiss.

## **Applicability of Claim Preclusion**

Zotos argues that even if the claim preclusion defense is considered on the merits, it does not bar his claims in the instant action because the defendants have failed to satisfy the requisite elements.  (Pl. Opp. Mem. at 10).  He further argues that in any event, this case falls within an exception to claim preclusion, known as the "jurisdictional competence exception," because the state courts which presided over his challenge to the CMVI lacked jurisdiction over his present claims.  (Id. at 10-12).  This court agrees that the defendants have failed to meet their burden of showing that claim preclusion bars Zotos' claims in this matter.  Moreover, this court finds that the jurisdictional competence

17

exception applies in any case because the state courts lacked authority to consider Zotos' claims for damages resulting from the alleged violations of his constitutional and state law rights.

### Merits of Claim Preclusion Defense

Even assuming, *arguendo*, that the defendants were able to establish the remaining elements of claim preclusion, this court concludes that they have failed to show an identity of the causes of action in the prior and present cases.  As a result, the defendants cannot sustain their defense of claim preclusion.

As an initial matter, the defendants' contention that Zotos effectively litigated his present claims in the state court proceedings is not supported by the record.  The purpose of those proceedings was to determine whether Zotos was responsible for the CMVI of speeding in excess of the 30 m.p.h. speed limit posted on Gardner Street in Hingham. While Zotos may have attempted to expand the claims before the state court by arguing, in his Appeals Court brief, that the speed limits were posted illegally and, therefore, were unenforceable, the Appeals Court did not address or even allude to any of Zotos' arguments regarding the alleged violations of his constitutional rights.  See Police Dep't of Hingham, 2012 WL 1689189, at *1-2.  Moreover, unlike the instant case, Zotos did not assert any claims for damages before the state court, and the state court did not have the occasion to address any such claims.  Therefore, the defendants have not shown that any of Zotos' present claims were litigated previously.

18

Nor have the defendants shown that Zotos had an opportunity to litigate his claims in connection with the CMVI proceedings.  "Claim preclusion does not just bar claims that were actually litigated, but rather 'prevents relitigation of all matters that were or could have been adjudicated' in the prior action."  Lynch, 218 F. Supp. 2d at 7 (quoting O'Neil v. City Manager of Cambridge, 428 Mass. 257, 259, 700 N.E.2d 530, 532 (1998)).  Here, however, the defendants have not shown that any of Zotos' constitutional or state law tort claims could have been adjudicated in the state courts.

The state court proceedings occurred pursuant to Mass. Gen Laws ch. 90C, which establishes a system for handling civil violations of the Massachusetts automobile laws. See Mass. Gen. Laws ch. 90C, § 3 (establishing non-criminal hearing and appeal procedure for hearing challenges to CMVIs issued under Massachusetts automobile laws); Commonwealth v. Mongardi, 26 Mass. App. Ct. 5, 6-7, 522 N.E.2d 984, 985-86 (1988) (describing procedure for handling CMVIs set forth in Chapter 90C).  By creating such a system, "the Legislature sought to fashion a nonjury civil procedure, which would give [a motor vehicle] operator the protection of an informal judicial hearing, while ensuring that the overburdened court system would not be involved in lengthy trials of matters that no longer carried criminal penalties."  Mongardi, 26 Mass. App. Ct. at 8-9, 522 N.E.2d at 986-87.  Thus, Mass. Gen. Laws ch. 90C establishes "a unique nonjury procedure, which seeks to attain prompt compliance with government regulations while preserving the right to a fair hearing[.]"  Id. at 9, 522 N.E.2d at 987 (internal citation omitted).  It is not aimed at redressing constitutional violations or resolving claims for

19

damages such as those asserted by Zotos in this court.  See id. at 8, 522 N.E.2d at 986

(describing procedure set forth in Chapter 90C as "essentially sui generis," and stating

that it "does not express a civil claim, right or remedy which was recognized at common

law as requiring a jury trial").  Therefore, the defendants have not shown that it would

have been feasible for Zotos to bring his present claims in the state court.  See Heacock v.

Heacock, 402 Mass. 21, 24, 520 N.E.2d 151, 153 (1988) (finding no identity of claims

asserted in prior divorce action and in present tort action where "[t]he purpose of a tort

action is to redress a legal wrong in damages" whereas the purpose of "a divorce action is

to sever the marital relationship between the parties" and purposes for which Probate

Court awards alimony and divides marital property "do not include compensating a party

for damages for injuries suffered").  The doctrine of claim preclusion has no application

to the instant case.

### The Jurisdictional Competence Exception

Even if the defendants had shown that the elements of claim preclusion were

satisfied in the first instance, a review of the statutory scheme for addressing CMVIs

supports Zotos' argument that this case falls within the jurisdictional competence

exception to claim preclusion.  That exception, which is set forth in the Restatement

(Second) of Judgments § 26(1)(c) (1982),[5] provides as follows:

---

[5]  Massachusetts courts "follow[ ] the majority view of the Restatement (Second) of
Judgments, (1982), which is the claim preclusion standard applied by federal courts."  Lynch, 218
F. Supp. 2d at 7 n.8.

(1)  When any of the following circumstances exists, the general rule of [claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:

* * *

(c) The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief; ....

Thus, the "jurisdictional competence exception permits the maintenance in a second suit of a claim stemming from the cause of action previously sued upon 'if a jurisdictional obstacle has precluded raising that issue in the first action.'"  Kale v. Combined Ins. Co. of Am., 924 F.2d 1161, 1167-68 (1st Cir. 1991) (quoting Pasterczyk v. Fair, 819 F. 2d 12, 14 (1st Cir. 1987)).  See also Heacock, 402 Mass. at 24, 520 N.E.2d at 153 (no claim preclusion where Probate Court lacked jurisdiction to hear tort claims and make damage awards, and therefore, "plaintiff could not have recovered damages for the tort in the divorce action").

As indicated above, the procedure set forth in Mass. Gen. Laws ch. 90C demonstrates that courts considering challenges to CMVIs lack authority to adjudicate claims for damages such as those asserted in this case.  Under Chapter 90C, a motor vehicle operator who receives a citation may contest responsibility for the infraction by requesting a hearing before a clerk-magistrate.  See Mass. Gen. Laws. ch. 90C, § 3(A)(4). At the conclusion of the hearing, the magistrate must enter a finding of either

"responsible or not responsible." Id.  However, "[n]o other disposition shall be

permitted[.]"  Id.  Furthermore, to the extent the motor vehicle operator or the opposing

police agency wishes to appeal from the clerk-magistrate's decision, that party may

appeal to a District Court judge for a de novo hearing.  Id.  See also Mongardi, 26 Mass.

App. Ct. at 6, 522 N.E.2d at 985-86.  Again, the judge "shall announce a finding of

responsible or not responsible" at the conclusion of the hearing, and "[n]o other

disposition shall be permitted[.]"  Mass. Gen. Laws ch. 90C, § 3(A)(4).[6]  Accordingly,

under the statutory scheme, the state courts' authority is limited to a determination

whether or not the operator was responsible for the CMVI, and they do not have

jurisdiction to hear claims such as those asserted here.  For this reason as well, the

defendants' motion to dismiss on the basis of claim preclusion is denied.

### C.    Issue Preclusion

The defendants also argue, in a footnote to their memorandum, that Zotos should

be barred under the doctrine of issue preclusion from challenging the following facts in

the instant case: "(1) [Zotos] was traveling in an area identified as a 'thickly settled area,'

in which G.L. c. 90, § 17(3) limits speeds to thirty miles per hour; (2) he was cited for

going fifty miles per hour; and (3) under either G.L. c. 90, §§ 17 or 18, regardless of

_____

[6]  The statutory procedure established under Chapter 90C also allows for "[q]uestions of
law arising in the disposition of a civil motor vehicle infraction in a noncriminal hearing"  before
the District Court judge to be appealed to the Appellate Division of the District Court and then to
the Massachusetts Appeals Court.  Mass. Gen. Laws ch. 90C, § 3(A)(5).  See also Mongardi, 26
Mass. App. Ct. at 7, 522 N.E.2d at 986.  However, it does not authorize the state courts to
consider claims other than whether the vehicle operator was responsible for the CMVI at issue.

whether § 18 was complied with by the Town, the plaintiff was operating his vehicle at a prohibited speed limit." (Def. Mem. at 12 n.2). However, they have made no attempt to identify the elements necessary to prevail on a claim of issue preclusion or to describe why those elements have been met here. The First Circuit has held repeatedly "that arguments raised only in a footnote or in a perfunctory manner are waived." Nat'l Foreign Trade Council v. Natsios, 181 F.3d 38, 60 n.17 (1st Cir. 1999). Therefore, the defendants' failure to develop any arguments to support the application of issue preclusion warrants the denial of their motion with respect to that issue.

This court also notes that under Massachusetts law, "preclusive effect should not be given to issues or claims that were not actually litigated in [the] prior action[.]'" Jarosz v. Palmer, 436 Mass. 526, 531, 766 N.E.2d 482, 488 (2002). The record before this court indicates that the question as to whether Zotos was traveling in an area that was thickly settled for purposes of Mass. Gen. Laws ch. 90, § 17, or was operating his motor vehicle in violation of that statutory provision, was never addressed at the hearing before the Hingham District Court, and that Zotos never had a full opportunity to express his views on those issues. (See generally Pl. Ex. 1). The Appeals Court's assertion that Zotos had been driving in a thickly settled area does not appear to be based on a factually developed record. See Jarosz, 436 Mass. at 531, 766 N.E.2d at 488 (ruling that issue must be "subject to an adversary presentation" before it can have a preclusive effect (internal quotations omitted)). Therefore, the defendants' motion to dismiss on the basis of issue preclusion is denied.

### D.      Counts I-X: Alleged Violations of Right to Due Process

In Counts I-X of his complaint, Zotos has asserted claims, pursuant to 42 U.S.C. § 1983 ("Section 1983"), for violations of his Fourteenth Amendment right to substantive and procedural due process.  The defendants contend that these claims should be dismissed because "the plaintiff has wholly failed to plead facts on which a constitutional violation could be found."  (Def. Mem. at 16).  For the reasons that follow, this court finds that Zotos' pleadings are insufficient to state a claim, and that these counts should be dismissed.

### Substantive Due Process

In order to support a substantive due process cause of action under the circumstances alleged here, the plaintiff "must present a well-pleaded claim that a state actor deprived [him] of a recognized life, liberty, or property interest, and that he did so through conscience-shocking behavior."  Estate of Bennett v. Wainwright, 548 F.3d 155, 162 (1st Cir. 2008).  See also DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005) (explaining, in action against police officer, that an abuse of power by members of "the executive branch of state government sinks to a level cognizable under the Due Process Clause only when it is so extreme and egregious as to shock the contemporary conscience").  Although "the 'shock the conscience' standard is imprecise," it is "readily apparent that negligent conduct, simpliciter, is categorically insufficient to shock the conscience."  Id. at 118-19.  Rather, behavior "that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in 'conduct intended to

injure in some way unjustifiable by any government interest.'" Id. at 119 (quoting

County of Sacramento v. Lewis, 523 U.S. 833, 848, 118 S. Ct. 1708, 140 L. Ed. 2d 1043

(1998)).

Zotos alleges, and the defendants do not dispute, that he was deprived of a

property interest as a result of the assessments and surcharges that he was required to pay

for exceeding the posted speed limits.  (See Compl. ¶¶ 32, 42, 66).  Therefore, the critical

issue is whether the defendants' alleged conduct in posting and enforcing illegal speed

limit signs rises to the level of conscience-shocking behavior.  Because this court finds

that it does not, the plaintiff's substantive due process claims must be dismissed.

As an initial matter, it is "bedrock law" in the First Circuit "that violations of state

law – even where arbitrary, capricious, or undertaken in bad faith – do not, without more,

give rise to a denial of substantive due process under the U.S. Constitution."  Coyne v.

City of Somerville, 972 F. 2d 440, 444 (1st Cir. 1992).  Rather, in order to demonstrate

conduct that "'shocks the conscience[,]'" a plaintiff must present "'stunning' evidence of

'arbitrariness and caprice' that extends beyond '[m]ere violations of state law, even

violations resulting from bad faith' to 'something more egregious and more extreme.'"

J.R. v. Gloria, 593 F.3d 73, 80 (1st Cir. 2010) (quoting DePoutot, 424 F.3d at 119).  No

such showing has been made here.

In the instant case, Zotos' allegations, if true, demonstrate an intentional deter-

mination on the part of Town officials to post speed limits without complying with state

law and regulations.  However, according to the allegations of the complaint, the

25

defendants were motivated by a genuine concern that motorists were driving too fast, and a legitimate governmental interest in maintaining public safety.[7]  (See Compl. ¶¶ 33, 36, 74, 99).  The mere violation of state law by officials seeking to increase public safety is insufficient to meet the "extremely high" burden necessary to show conscience-shocking behavior.  J.R., 593 F.3d at 80.  It does not amount to stunning evidence of arbitrariness and caprice.

Moreover, "[a]lthough each determination of whether state conduct 'shocks the conscience' is necessarily fact-specific and unique to the particular circumstances in which the conduct occurred," the conduct alleged by Zotos is far less egregious than in cases where the controlling authority has found violations of substantive due process.  See Cruz-Erazo v. Rivera-Montanez, 212 F.3d 617, 623 (1st Cir. 2000).  Those cases illustrate that the type of behavior that is sufficiently extreme to offend due process is often highly physically intrusive or harmful.  For example, "conscience-shocking state action has been found where a suspect's stomach was forcibly pumped to obtain evidence, see Rochin v. California, 342 U.S. 165, 72 S. Ct. 205, 96 L. Ed. 183 (1952), and where a suspended police officer was required to undergo a penile plethysmograph as

---

[7]  To the extent Zotos claims that the defendants were motivated to violate state law by a desire to enrich the Town at the expense of unsuspecting motorists, he has not alleged any facts, as opposed to conclusory allegations, to support such a claim.  Thus, while Zotos uses such conclusory terms as "fraudulent" and "extortion" to describe the defendants' alleged scheme (see Compl. at Introduction), he has not alleged any facts to support a claim that the defendants were motivated by anything other than public safety.  (See, e.g., id. ¶¶ 33, 36).  Furthermore, since according to the complaint the speed limits were posted on signs viewable by the public, the complaint does not support the conclusion that "unsuspecting" motorists were harmed.

a condition of reinstatement, *see Harrington v. Almy*, 977 F.2d 37, 43-44 (1st Cir. 1992)." Id., 212 F.3d at 623.  It also has been found under circumstances involving the intentional framing of innocent individuals for crimes they did not commit.  See Limone v. Condon, 372 F.3d 39, 44-45 (1st Cir. 2004).  On the other hand, no due process violation has been found under circumstances where defendant police officers engaged in ongoing harassment and intimidation against the plaintiffs, occupied the plaintiffs' home without permission, and perjured themselves in an effort to support false charges against one of the plaintiffs.  See Cruz-Erazo, 212 F.3d at 618-23.  Nor has a due process violation been found under circumstances where the defendants' failure to perform background checks on two individuals caring for children in a foster home, despite regulatory requirements to do so, allegedly led to the abuse of the children by the two individuals.  See J.R., 593 F.3d at 79-80.  Zotos' allegations, which involve no physically intrusive or violent behavior on the part of the defendants, and no threats to deprive the plaintiff of his liberty, paint a much less extreme picture than the allegations at issue in Cruz-Erazo and J.R. v. Gloria.  Therefore, they do not support a substantive due process claim.

Finally, regardless of the defendants' intent in posting the speed limit signs, Zotos has failed to establish a claim under the Fourteenth Amendment.  A motorist driving on a road with a posted speed limit always has an option of driving within the posted limit and avoiding a citation, even if the speed limit appears unreasonably low for the area.  Under such circumstances, the defendants' alleged actions in unlawfully posting and enforcing

27

speed limits is not the type of conduct that is "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience." DePoutot, 424 F.3d at 119.

### Procedural Due Process

Zotos also alleges that the defendants' conduct in carrying out their scheme of posting and enforcing unlawful speed limit signs resulted in the deprivation of his property without procedural due process, in violation of his rights under the Fourteenth Amendment. However, the plaintiff's own allegations establish that he was provided with a substantial opportunity to contest the citations issued to him and to present his case to the state courts before he was ordered to pay any assessments or surcharges. Accordingly, he has failed to state a claim for violation of his right to procedural due process.

"To establish a procedural due process violation, the plaintiff 'must identify a protected liberty or property interest and allege that the defendants, acting under color of state law, deprived [him] of that interest without constitutionally adequate process.'" Gonzalez-Droz v. Gonzalez-Colon, 660 F.3d 1, 13 (1st Cir. 2011) (quoting Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 56 (1st Cir. 2006)). As described above, the defendants have not challenged Zotos' allegations that he was deprived of his property. The remaining question, therefore, is whether he was afforded constitutionally adequate process. See id.

"Procedural due process is a 'guarantee of fair procedure.'" Cotnoir v. Univ. of Me. Sys., 35 F.3d 6, 10 (1st Cir. 1994) (quoting Amsden v. Moran, 904 F.2d 748, 753

(1st Cir. 1990)) (additional citation omitted).  "The basic purport of the constitutional requirement is that, before a significant deprivation of liberty or property takes place at the state's hands, the affected individual must be forewarned and afforded an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Id. (quoting Amsden, 904 F.2d at 753) (additional citation omitted).  Thus, "[p]rocedural due process guarantees an affected individual the right to some form of hearing, with notice and an opportunity to be heard, before he is divested of his protected interest."  Id.  See also Amsden, 904 F.2d at 753 ("The essentials of procedural due process comprise notice of the charges and a reasonable chance to meet them").

The plaintiff's own allegations demonstrate that he was afforded due process prior to the deprivation of his property.  Specifically, Zotos alleges that in each of the two instances when he was issued a citation for the CMVI of speeding, he was given notice of the alleged violation and an opportunity to request a civil hearing by making a signed request on the back of the citation.  (Compl. ¶¶ 31, 37).  He also alleges that after receiving the citation for speeding on Gardner Street, he took full advantage of the procedures available for contesting a CMVI provided under Mass. Gen. Laws ch. 90C. (Compl. ¶¶ 38, 42-43).  Those procedures included a hearing before a clerk-magistrate of the Hingham District Court, a second, de novo hearing before a judge of the Hingham District Court, an appeal to the Appellate Division of the District Court, and a further appeal to the Massachusetts Appeals Court.  (Id. ¶¶ 38, 42-43).  This is more than adequate to satisfy the requirements of procedural due process.  See Gonzalez-Droz, 660

29

F.3d at 15 (concluding that due process was satisfied where "plaintiff had notice, an

opportunity to be heard, a right to counsel, and a right to present evidence to his own

behoof"); Amsden, 904 F.2d at 755 (finding that plaintiff could not plausibly claim that

he was denied due process where he "was apprised of [licensing authority's] concerns in

time to consider his options under the available review procedures and to act effectively

thereon"). See also Commonwealth v. Weiss, 2004 Mass. App. Div. 144, 2004 WL

2110593, at *3-4 (Sept. 21, 2004) (finding that basic requirements of procedural due

process were met where plaintiff attended and fully participated in hearings before a

clerk-magistrate and a judge of the District Court, pursuant to Mass. Gen. Laws ch. 90C,

§ 3, even though written notice describing plaintiff's right to contest motor vehicle

citation failed to describe his options for hearing and appeal).  Therefore, the plaintiff has

failed to state a plausible claim for relief.

### E.    State Law Claims

In addition to his claims under Section 1983, Zotos has asserted various tort claims

against the defendants under Massachusetts state law.  Those claims, which are set forth

in Counts XI through XIV of the complaint, include claims for abuse of process, fraudu-

lent misrepresentation, negligent misrepresentation, and unjust enrichment.  The defen-

dants contend that these claims, like Zotos' federal claims, should be dismissed pursuant

to Fed. R. Civ. P. 12(b)(6) for failure to state a plausible claim for relief.  (Def. Mem. at

16-18).  For the reasons that follow, this court finds that it is appropriate to retain

supplemental jurisdiction over Zotos' state law claims, and to dismiss them for failure to state a claim.

## Supplemental Jurisdiction

Zotos filed his claims in this court on the basis of federal question jurisdiction. (Compl. ¶ 1). "In a federal question case, the termination of the foundational federal claim does not divest the district court of power to exercise supplemental jurisdiction but, rather, sets the stage for an exercise of the court's informed discretion." Roche v. John Hancock Mut. Life Ins. Co., 81 F.3d 249, 256-57 (1st Cir. 1996). Thus, "[i]n deciding whether or not to retain jurisdiction [over the state law claims], the trial court must take into account concerns of comity, judicial economy, convenience, fairness, and the like. While dismissal may sometimes be appropriate if the federal-question claim is eliminated early in the proceedings, each case must be guaged on its own facts." Id. at 257. This court concludes that under the circumstances presented here, it is appropriate to retain supplemental jurisdiction over Zotos' state law claims.

This court finds, as an initial matter, that concerns of judicial economy and convenience support this court's retention of supplemental jurisdiction. This court has already reviewed Zotos' 64-page complaint, and the parties have addressed the adequacy of the state law claims in connection with the motion to dismiss. Therefore, it would be far more convenient for this court to assess those claims at this time rather than to dismiss them so that Zotos can refile them in state court and defend them again on a motion to dismiss. In addition, the state law claims asserted in this case are straightforward and

31

raise no novel or complex issues of state law.  Accordingly, there is no compelling reason

to have such claims addressed by the state courts, as opposed to the federal court.  See

Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) (explaining that

"[a]nother factor to be weighed is the clarity of the law that governs the pendent claim").

Furthermore, this court does not believe, and neither party has suggested, that there

would be any unfairness involved if this court were to address the sufficiency of the state

law claims on the merits.  In fact, by their briefs, the parties have indicated their consent

to such an approach.

　　　　Finally, the First Circuit has emphasized that "[t]he running of the statute of

limitations on a pendent claim, precluding the filing of a separate suit in state court, is a

salient factor to be evaluated when deciding whether to retain supplemental jurisdiction."

Id.  By his state law claims, Zotos is seeking damages stemming from both the incident

that occurred on Charles Street in June 2009 and the incident that occurred on Gardner

Street in December 2010.  Additionally, his fraudulent and negligent misrepresentation

claims seek damages only for the incident that occurred on Charles Street.  (See Compl.

¶¶ 31, 37; Pl. Opp. Mem. at 19).  Under Massachusetts law, the statute of limitations for

tort claims is three years.  See Mass. Hous. Opportunities Corp. v. Whitman & Bingham

Assocs., P.C., 83 Mass. App. Ct. 325, 328, 983 N.E.2d 734, 737 (2013) (noting that

"[t]ort claims in Massachusetts are governed by the three-year limitations period set forth

in G.L. c. 260, § 2A" (quotations and citation omitted)).  Therefore, unless Zotos could

establish that the statute of limitations should not begin to run until more than a year after

he received the June 2009 CMVI, he would be barred from asserting at least some of his claims against the defendants in a separate state court action.  For this reason as well, this court finds that it is appropriate to retain supplemental jurisdiction over the state law claims, and to address the defendants' motion to dismiss those claims on the merits.

## Count XI: Claim for Abuse of Process

In Count XI of his complaint, Zotos asserts that certain of the defendants, including the Town, members of the Hingham Board of Selectmen, and members of the Hingham Police Department, engaged in an abuse of process by issuing CMVI citations to Zotos for illegitimate purposes and maintaining a civil lawsuit against him even after they confirmed that the speed limit on Gardner Street had been illegally posted.  The defendants argue that Zotos has failed to state a claim for abuse of process because "the plaintiff was the one who instituted the 'process' in question" and because the defendants' participation in the court proceedings was done for a legitimate purpose.  (Def. Mem. at 16-17).  Because the plaintiff has failed to allege that the defendants used "process," as defined under Massachusetts law, or that they acted for an ulterior or illegitimate purpose, the defendants' motion to dismiss Count XI of the complaint is allowed.

"To sustain an abuse of process claim, the fact finder must find that process was used to accomplish some ulterior purpose for which it was not designed or intended, or which was not the legitimate purpose of the particular purpose employed."  Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636, 925 N.E.2d 513, 522 (2010)

(quotations and citations omitted).  Therefore, in order to state such a claim, the plaintiff must allege the following three elements: (1) "that 'process' was used," (2) "for an ulterior or illegitimate purpose," (3) "resulting in damage."  Id.

Massachusetts courts have construed the term "process" narrowly.  See Powers v. Leno, 24 Mass. App. Ct. 381, 384 n.7, 509 N.E.2d 46, 49 n.7 (1987) (describing the definition of "process" in the Massachusetts case law as "limited").  "Under Massachusetts law, 'process' in the context of abuse of process 'refers to the papers issued by a court to bring a party or property within its jurisdiction.'"  Id. at 383, 509 N.E.2d at 48 (quoting Jones v. Brockton Pub. Mkts., Inc., 369 Mass. 387, 390, 340 N.E.2d 484 (1975)).  Accordingly, "Massachusetts cases on abuse of process have been limited to three types: writs of attachment, process used to institute a civil action, and process related to the bringing of criminal charges."  Bliss v. Sanguinet, No. 12-10123, 2013 WL 3334728, at *7 (D. Mass. June 24, 2013) (slip op.).  See also Jones, 369 Mass. at 389-90, 340 N.E.2d at 485-86 (noting that abuse of process cases have been limited to three types of process, and declining to broaden the definition of process to cover injunctions).

Zotos' assertion that the defendants engaged in an abuse of process by issuing citations and participating in court proceedings against him is inconsistent with the definition of "process" used by the Massachusetts courts.  A citation issued by a police officer is not a paper issued by a court to bring a party within its jurisdiction, or the type of process used to institute a civil action, even if it was the issuance of a citation that triggered Zotos' right to request a hearing in the Hingham District Court.  As the

34

defendants argue, it was Zotos, not the defendants, who initiated process by requesting the court's intervention.  The fact that the defendants were responsible for the events that led Zotos to use process, and the fact that the police participated in the state court proceedings, does not fit within the "limited definition of 'process' in the Massachusetts decisions" and does not give rise to a claim for abuse of process.[8]

Even if Zotos had alleged that the defendants used process, he has not alleged sufficient facts to satisfy the second element of an abuse of process claim.  According to the complaint, the police participated in the state court proceedings for the purpose of presenting Zotos' alleged motor vehicle infraction to the courts and justifying the issuance of a citation.  This is precisely the role that the police are expected to perform as part of the procedure established under Mass. Gen. Laws ch. 90C.  See City of Cambridge v. Phillips, 415 Mass. 126, 130, 612 N.E.2d 638, 641 (1993) ("In the administration of the law concerning civil motor vehicle infractions, the police act as prosecutors as a practical matter in presenting such infractions to clerk-magistrates and to judges").  Therefore, the defendants were not using legal process "to accomplish some ulterior purpose for which it was not designed or intended[.]"  Millennium Equity

_____

[8]  The plaintiff suggests that because the police assume a prosecutorial role in CMVI proceedings, their actions should be construed as a use of process.  (Pl. Opp. Mem. at 18).  The Massachusetts Supreme Judicial Court has noted that "the police act as prosecutors as a practical matter in presenting [civil motor vehicle] infractions to clerk-magistrates and to judges."  City of Cambridge v. Phillips, 415 Mass. 126, 130, 612 N.E.2d 638, 641 (1993).  However, the courts have not equated that role with process for purposes of an abuse of process claim.

35

Holdings, LLC, 456 Mass. at 636, 925 N.E.2d at 522.  For this reason as well, the

plaintiff's claim for abuse of process must be dismissed.

### Counts XII and XIII: Claims for Misrepresentation

The defendants have also moved to dismiss Zotos' claims for fraudulent and

negligent misrepresentation, which are set forth in Counts XII and XIII of the complaint

and are based on the alleged misrepresentation that the speed limit signs were valid when

in fact they were not.  The defendants contend that Zotos has failed to state a claim under

either theory because the representations were not false, and because Zotos did not rely

on the posted limits when he decided to drive at speeds above those limits.  (Def. Mem. at

17-18).  For the reasons that follow, the defendants' motion to dismiss these claims is

allowed.

In order to state a claim for fraudulent misrepresentation, the plaintiff must allege

"that the defendants made a false representation of material fact, with knowledge of its

falsity, for the purpose of inducing the plaintiff[ ] to act on this representation, that the

plaintiff[ ] reasonably relied on the representation as true, and that [the plaintiff] acted

upon it to [his] damage."  Cumis Ins. Soc'y, Inc. v. BJ's Wholesale Club, Inc., 455 Mass.

458, 471, 918 N.E.2d 36, 47 (2009)   Similarly, in order to support a claim for negligent

misrepresentation, the plaintiff must allege facts showing that the defendant supplied

false information to others "without exercising reasonable care or competence in

obtaining or communicating the information, that those others justifiably relied on the

information, and that they suffered pecuniary loss caused by their justifiable reliance upon the information." Id. at 471-72, 918 N.E.2d at 47-48 (quotations omitted).

This court finds that Zotos' complaint does not support a plausible claim under either theory because the plaintiff has not alleged sufficient facts to show that the defendants made a false representation of a material fact. Zotos' claims for both fraudulent and negligent misrepresentation stem from the June 25, 2009 incident on Charles Street. (See Pl. Opp. Mem. at 19; Compl. ¶¶ 31-32, 121-22, 125-26). According to the plaintiff, the posted speed limit on that street was 30 m.p.h., and he was issued a citation for driving in excess of 30 m.p.h. (Compl. ¶ 31). Thus, even if the defendants failed to follow the procedures required for posting the sign, the information that they provided to the public about the acceptable speed on Charles Street was accurate. Therefore, Zotos' allegations show that there was no misrepresentation, and the defendants' motion to dismiss is allowed with respect to Counts XII and XIII.

## Count XIV: Claim for Unjust Enrichment

Zotos' final cause of action, which is set forth in Count XIV of his complaint, asserts a claim against the Town for unjust enrichment. The defendants argue that this claim must be dismissed because unjust enrichment is not available where a party has an adequate remedy at law. (Def. Mem. at 18). This court agrees that Count XIV should be dismissed.

Unjust enrichment is an equitable claim that involves the "retention of money or property of another against the fundamental principles of justice or equity and good

conscience." <u>Fernandes v. Havkin</u>, 731 F. Supp. 2d 103, 114 (D. Mass. 2010)

(quotations and citations omitted).  "A claim of unjust enrichment, however, is 'not

available to a party with an adequate remedy at law.'" <u>Id.</u> (quoting <u>Ben Elfman & Son,</u>

<u>Inc. v. Criterion Mills, Inc.</u>, 774 F. Supp. 683, 687 (D. Mass. 1991)).  The availability of

statutory and common law claims for damages constitute an adequate remedy at law, even

if they prove unsuccessful.  <u>See id.</u>  (holding that plaintiff's negligence claims and claims

under Mass. Gen. Laws ch. 93A barred his claim for unjust enrichment notwithstanding

the ultimate disposition of those claims).  Therefore, Zotos' Section 1983, abuse of

process and misrepresentation claims "preclude a claim for unjust enrichment."[9] <u>Id.</u>

## IV.  CONCLUSION

For all the reasons detailed herein, the defendants' Motion to Dismiss is

ALLOWED with respect to all of Zotos' claims.  The complaint is dismissed without

prejudice.

       / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[9]  In contrast, the fact that Zotos had the opportunity to appeal his CMVIs pursuant to Mass. Gen. Laws ch. 90C did not provide him with an adequate remedy at law because it did not enable him to recover damages for the harm he claims to have suffered as a result of the defendants' alleged conduct.